IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| UNITED STATES OF AMERICA, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> KURTIS BROWN, : <br> : <br> Defendant. : <br> : <br> : <br> : | Crim. Nos. 07-890 and 07-19 (RBK) <br><br> **OPINION** |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant Kurtis Brown's Emergency Motion for Compassionate Release (Doc. 23 ("Def. Mot.")).[1] Defendant is presently incarcerated at the Metropolitan Detention Center ("MDC") in Brooklyn, New York, and seeks release based on danger posed by the present COVID-19 pandemic. (Def. Mot at 1.) The Government opposes this motion, arguing that Defendant has not properly met the standards for compassionate release, and would pose a danger to the public. (Doc. 25 ("Govt. Resp.").) For the reasons expressed herein, Defendant's motion (Doc. 23) is DENIED.

**I.     BACKGROUND**

In September and October 2006, Defendant, along with several other individuals, robbed at gunpoint a number of pharmacies in Pennsylvania and New Jersey. Defendant was charged for his role in these robberies in two separate cases before this Court, docketed at 07-19, and 07-890.

---

[1] Defendant has filed identical motions in his two cases before this Court, docketed at 07-19 and 07-890. Although this holding applies to both motions, for purposes of referring to specific docket entries, the Court uses the document numbers in 07-890 throughout this Opinion unless otherwise noted.

In 2007, Defendant pleaded guilty in both cases. In 07-19, he pleaded guilty to two counts of pharmacy robbery and one count of use of a firearm in furtherance of a crime of violence. (Crim. No. 07-19, Doc. 41.) In 07-890, he pleaded guilty to six counts of pharmacy robbery and one count of attempted robbery. (Crim. No. 07-890, Doc. 5.) This Court sentenced Defendant to be imprisoned for a total of 120 months, to be followed by a total of five years of supervised release. (Crim. No. 07-19, Doc. 46 at 2–3.)

Defendant began his supervised release on August 5, 2015. (Crim. No. 07-19, Doc. 67 at 2.) On September 11, 2015, this Court found that Defendant violated his condition of supervised release that required him to pay restitution in monthly installments of no less than $50.00. (*Id*.) On March 9, 2016, this Court again found Defendant to have violated a supervision condition that required him to refrain from use of any controlled substance: Defendant had tested positive for cocaine on February 22, 2016. (Crim. No. 07-19, Doc. 68 at 2.)

Defendant then committed three further separate violations of the condition of his supervised release mandating that he "not commit another federal, state, or local crime." (Crim. No. 07-19, Doc. 73.) On December 7, 2017, Defendant assaulted his girlfriend. She reported that he "took her head and slammed her face to the floor and threw her into the bathtub." (*Id*. at 2.) The Berlin Township Municipal Court issued an arrest warrant for Defendant based on this incident, charged him with assault and criminal mischief, and issued a temporary restraining order. (*Id*.) Also on December 7, 2017, Defendant's girlfriend reported that he stole her debit/credit card and used it for numerous transactions. (*Id.* at 3.) The Berlin Township Police advised U.S. Probation that Defendant was being investigated for credit card fraud in connection with this report, and would be bringing felony charges against Defendant. (*Id*.)

Defendant then committed the last—and most extreme—violation of his supervised release on January 1, 2018. (Crim. No. 07-19, Doc. 73 at 3.) On this date, Defendant went to his girlfriend's residence and assaulted her. (*Id.*) After leaving her residence, Defendant retrieved a gas can, re-entered her residence, and poured gasoline over her, her dogs, and the contents of her home. (*Id.*) After dousing the victim and her belongings in gasoline, Defendant held up a match and threatened to light it. (*Id.*) A neighbor called the police, who arrived and arrested Defendant following a fight. (*Id.*) Based on this incident, the Berlin Township Police charged Defendant with criminal attempt, aggravated arson, domestic violence-aggravated assault, terroristic threats, resisting arrest, simple assault on law enforcement, witness tampering and a violation of a restraining order. (*Id.*)

On January 6, 2020, Defendant admitted guilt to this third violation, and this Court accordingly revoked the previously imposed term of supervised release and ordered that Defendant be imprisoned for a 10-month term. (Crim. No. 07-19, Doc. 77.) Based on dangers posed by the COVID-19 pandemic, Defendant now moves for compassionate release. (Doc. 23.)

## II.    LEGAL STANDARD

"The recently enacted First Step Act allows a defendant to be afforded compassionate release for 'extraordinary and compelling reasons.'" *United States v. Sellers*, Crim. No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020) (quoting 18 U.S.C. § 3582(C)(1)(A)(i)). Before bringing a motion for reduced sentence on their own behalf, defendants first "must ask the Bureau of Prisons ("BOP") to do so on their behalf, give BOP thirty days to respond, and exhaust any available administrative appeals." *United States v. Raia*, Civ. No. 20-1033, 2020 WL 1647922, at *1 (3d Cir. Apr. 2, 2020) (citing § 3582(c)(1)(A)). "Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1)

exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *Sellers,* 2020 WL 1972862 at *1 (citing 18 U.S.C. § 3582(C)(1)(A)).

At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3852(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Pabon*, Crim. No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020).

### III.  DISCUSSION

Defendant alleges and the Government agrees that Defendant has satisfied the exhaustion requirement, and is thus permitted to bring a motion for reduced sentence in this Court. (Def. Mot. at 7; Govt. Resp. at 6.)[2] Thus, the Court focuses on the second step of the analysis.

#### A. Whether extraordinary and compelling reasons exist

Defendant asserts that extraordinary and compelling reasons warrant a reduction in his sentence to time served, arguing that: 1) being housed in the MDC presents an exceptional risk of contracting COVID-19, and 2) Defendant in particular is at high risk of severe illness if he were to contract COVID-19 due to his underlying medical issues. (Def. Mot. at 8–10.) The Government argues in response that a general risk of contracting COVID-19 does not meet the "extraordinary and compelling" standard, and that Defendant's particular medical conditions do not rise to the necessary "high risk" level. (Govt. Resp. at 8–11.)

In arguing that the risk of COVID-19 is particularly severe at the MDC, Defendant notes that New York City has over 153,204 confirmed cases of COVID-19, and that as of April 23, 2020,

---

[2] The Court is in receipt of an April 24, 2020 letter from the Warden of MDC Brooklyn denying Defendant's compassionate release request (Doc. 25-1).

six MDC inmates and 26 staff members have tested positive. (Def. Mot. at 3.) While the Court does not seek to undermine the seriousness of this pandemic, Defendant's argument that the existence of COVID-19 at the MDC is "extraordinary and compelling" is severely undercut for two reasons. First, the Third Circuit recently addressed the issue of COVID-19 as it pertains to prison populations, stating that the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, Civ. No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020). Second, in *United States v. Sellers*, this Court addressed conditions at MDC Brooklyn specifically, and found "the measures instituted by the BOP to be reasonable to address the virus outbreak." 2020 WL 1972862, at *2.

Thus, Defendant's assertion that "extraordinary and compelling reasons" exist for his release cannot be based solely on the fact that COVID-19 might spread further at MDC. *See also United States v. Stevens*, Crim. No. 19-350-02, 2020 WL 1888968, at *4 (E.D. Pa. Apr. 16, 2020) ("Although the Court is aware of the dangers posed by COVID-19 and is sympathetic to [Defendant's] concern about COVID-19 given his diabetes, speculation about possible future conditions at the FDC does not constitute an exceptional reason for release.") (collecting cases); *United States v. Haney*, Crim. No. 19-541, 2020 WL 1821988 at *5 (S.D.N.Y. Apr. 13, 2020) (denying a 61-year-old defendant's request for early release from MDC Brooklyn, stating that although the MDC has several confirmed cases of COVID-19, "there is no meaningful counter-evidence suggesting that the COVID-19 virus is rapidly spreading in the MDC").

Defendant does go a step beyond arguing the risks of COVID-19 generally by also arguing that he is particularly vulnerable due to his health conditions: he has paroxysmal atrial fibrillation and high blood pressure, and is 55 years old. (Def. Mot. at 4.) He asserts that "[p]aroxysmal atrial

5

fibrillation is an irregular and often rapid heart rate that can increase the risk of strokes, heart failure and other heart-related complications." (Def. Mot. at 4.) In response, the Government argues that Defendant's heart condition, age, or high blood pressure, although generally concerning, do not cause a higher risk of contracting COVID-19. (Govt. Resp. at 8–11.)

According to guidance released by the Centers for Disease Control and Prevention ("CDC"), certain categories of individuals face a higher risk from COVID-19.[3] These include "older adults"—defined as "65 years and older"—and "people of any age who have serious underlying medical conditions." *Id.* The serious medical conditions referenced include: chronic lung disease, asthma, serious heart conditions, immunocompromising conditions, obesity, diabetes, chronic kidney disease, and liver disease. The specific heart conditions listed include "heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension."[4]

Although Defendant claims that his age puts him at risk, he is ten years shy of being considered an "older adult" at high risk. Further, general high blood pressure does not constitute a high-risk category. The central issue, then, is Defendant's heart condition—paroxysmal atrial fibrillation—and whether it constitutes an extraordinary and compelling reason for early release.

The Government argues that Defendant's heart condition is not exceptionally serious, pointing to an April 20, 2020 medical exam in which a "BOP nurse found that Defendant only had two irregular heartbeats in a two minute period," as well as two blood pressure readings within normal range. (Govt. Resp. at 11.) Defendant had another exam on April 24, 2020, during which

---

[3] *People Who Are at Higher Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Apr. 15, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

[4] *Groups at Higher Risk for Severe Illness: Serious Heart Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Apr. 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#serious-heart-conditions (stating that "COVID-19, like other viral illnesses such as the flu, can damage the respiratory system and make it harder for your heart to work").

his blood pressure was "slightly elevated," but his heart rate, rhythm, and heart sounds were all normal, with no murmur. (*Id.*) Also debated is the issue of whether Defendant will be at any less risk of contracting COVID-19 or be better able to cope with his heart condition if he is released.[5] (Def. Br. at 5; Govt. Resp. at 10).

Although the parties extensively argue these issues, it is unnecessary for the Court to definitively pronounce whether Defendant's heart condition reaches the severity of those identified by the CDC, because, as explained below, the § 3553(a) factors weigh strongly against early release. *See United States v. Miranda*, Crim. No. 16- 128-1, 2020 WL 2124604, at *4 (D. Conn. May 5, 2020) ("Courts have found during the coronavirus pandemic that, even where an individual has medical conditions which make him vulnerable to COVID-19, his danger to the community may ultimately outweigh his health concerns and the balance of factors weighs against release.") (collecting cases).

## B.  § 3553(a) Factors

In considering whether to reduce a defendant's sentence, a court must look to the factors contained in 18 U.S.C. § 3553(a). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

---

[5] The Government notes that, based on Defendant's proposed release plans, he may be more likely to contract COVID-19 if he is released. (Govt. Resp. at 10.) In his letter to the MDC Warden, Defendant proposed that he would live in Sicklerville, New Jersey. (*Id.*) Camden County, which encompasses Sicklerville, had "3,629 confirmed positive cases of COVID-19 and 189 total fatalities," as opposed to MDC's total of 6 confirmed inmate cases, 36 confirmed staff cases, and 0 deaths. (*Id.*) Defendant does not address his future plans in his brief, but argues that it is unclear whether he will be able to see an appropriate heart specialist if he remains confined. (Def. Mot. at 5.)

18 U.S.C.A. § 3553.

Defendant's underlying offense—armed robbery of numerous pharmacies—is unquestionably serious. However, it is possibly even more alarming that, after being released from his confinement in 2015, Defendant immediately and repeatedly began violating the conditions of his supervised release. (Crim. No. 07-19, Docs. 67, 68, 73.) Considering Defendant's specific acts—such as assaulting his girlfriend, unlawfully using her debit/credit cards, and threatening to set her on fire—§ 3553(a)(2)(C) is called sharply into focus here. As the Government argues, there exists a clear need "to protect the public from further crimes of the defendant." 18 U.S.C. §3553(a)(2)(C). Defendant's supervised release violations occurred relatively recently, in January 2018. Defendant has presently served only half of his 10-month term; cutting this term in half would certainly fail to reflect the seriousness of his violations.

Based on the totality of Defendant's actions, this Court finds that § 3553(a) weighs against granting Defendant's motion for a reduced sentence. In finding so, the Court is cognizant of the need to protect the public, the seriousness of Defendant's conduct, and the need to deter future criminal conduct – particularly considering the fact that Defendant's original 120-month term of imprisonment did not deter him from committing violent crimes upon his release. *See United States v. Butler*, Crim. No. 19-834-10, 2020 WL 1689778, at *3 (S.D.N.Y. Apr. 7, 2020) (denying a motion for early release of a MDC inmate with asthma and a serious heart condition, after finding that, "[w]hile the prospect of contracting COVID-19 undeniably presents a serious risk to [the defendant's] health, his [early] release . . . at least equally exposes the community to a serious risk that he would resume violence.")

IV.     CONCLUSION

For the above reasons, Defendant's Emergency Motion for Compassionate Release is hereby DENIED. An accompanying Order shall issue.

Dated: 5/13/2020                                      s/ Robert B. Kugler
                                                                                             ROBERT B. KUGLER
                                                                                             United States District Judge